UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**MATTHEW CLEMENS,**
individually and on behalf of all
others similarly situated,

    Plaintiff,

v.

**DEVRY UNIVERSITY, INC.**

    Defendant.
_____/

CASE NO. 1:25-cv-1713

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Matthew Clemens ("Plaintiff") brings this class action against Devry University, Inc. ("Defendant") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. (the "TCPA").

2. To promote its goods and services, Defendant engages in unsolicited text messaging and continues to text message consumers after they have opted out of Defendant's solicitations. Defendant also engages in telemarketing without the required policies and procedures, and training of its personnel engaged in telemarketing.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of Plaintiff and the Class members. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

1

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA.

5. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District.

## PARTIES

6. Plaintiff is a natural person entitled to bring this action under the TCPA and a resident of this District.

7. Defendant is a corporation that is registered to do business in this District.

8. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

9. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Plaintiff's cellular telephone number is 815-545-XXXX.

11. Plaintiff personally listed his telephone number on the National Do-Not-Call Registry on May 24, 2008, and has not removed it from the Registry since that time.

12. Plaintiff uses this telephone number for personal, residential, and household purposes.

13. Plaintiff's telephone number is not associated with any business and Plaintiff does not use it for that purpose.

14. Over the last twelve (12) months, Plaintiff has received more than a dozen (12) telephone solicitations on his cellular telephone, 815-545-XXXX, from Defendant.

15. Plaintiff has never been a customer of Defendant and never consented to receive telephone solicitations from Defendant.

16. Yet, these calls were placed for the purpose of advertising Defendant's services to Plaintiff.

17. On at least ten (10) occasions, Plaintiff answered Defendant's calls, informed a representative of Defendant that he is not interested in Defendant's services, and asked Defendant to cease calling him.

18. Despite this, Plaintiff has continued to receive persistent and harassing calls from Defendant.

19. These calls include, but are not limited to, the following:
- August 19, 2024, at 11:00 a.m. from 815-580-4570
- September 3, 2024, at 4:46 p.m. from 815-580-4570
- September 3, 2024, at 5:53 p.m. from 815-580-4570
- September 3, 2024, at 5:57 p.m. from 815-580-4570
- September 3, 2024, at 7:52 p.m. from 815-580-4570
- September 4, 2024, at 10:00 a.m. from 815-580-4570
- September 4, 2024, at 10:04 a.m. from 815-580-4570
- September 4, 2024, at 2:01 p.m. from 815-580-4570
- September 4, 2024, at 2:20 p.m. from 815-580-4570
- September 5, 2024, at 5:54 p.m. from 815-580-4570
- September 6, 2024, at 11:01 p.m. from 815-580-4570
- September 25, 2024, at 11:16 a.m. from 815-580-4570
- September 25, 2024, at 2:20 p.m. from 815-580-4570
- September 26, 2024, at 10:04 a.m. from 815-580-4570
- September 26, 2024, at 2:08 p.m. from 815-580-4570
- September 26, 2024, at 5:15 p.m. from 815-580-4570
- September 27, 2024, at 11:13 p.m. from 815-580-4570
- September 30, 2024, at 11:07 a.m. from 815-580-4570
- November 19, 2024, at 3:40 p.m. from 815-580-4570
- November 19, 2024, at 3:43 p.m. from 815-580-4570
- November 19, 2024, at 4:42 p.m. from 815-580-4570
- November 19, 2024, at 7:45 p.m. from 815-580-4570
- November 19, 2024, at 7:48 p.m. from 815-580-4570
- November 20, 2024, at 10:00 a.m. from 815-580-4570
- November 20, 2024, at 10:02 a.m. from 815-580-4570
- November 20, 2024, at 3:40 p.m. from 815-580-4570
- November 20, 2024, at 3:43 p.m. from 815-580-4570

- November 20, 2024, at 5:00 p.m. from 815-580-4570
- November 20, 2024, at 5:17 p.m. from 815-580-4570
- November 21, 2024, at 4:40 p.m. from 815-580-4570
- November 21, 2024, at 4:44 p.m. from 815-580-4570
- December 28, 2024, at 9:28 a.m. from 815-580-4570
- December 28, 2024, at 10:02 a.m. from 815-580-4570
- December 28, 2024, at 10:08 a.m. from 815-580-4570
- December 28, 2024, at 10:41 a.m. from 815-580-4570
- December 28, 2024, at 11:08 a.m. from 815-580-4570
- December 28, 2024, at 12:27 p.m. from 815-580-4570
- December 28, 2024, at 12:30 p.m. from 815-580-4570
- December 28, 2024, at 12:37 p.m. from 815-580-4570
- December 28, 2024, at 12:45 p.m. from 815-580-4570
- December 30, 2024, at 11:58 a.m. from 815-580-4570
- December 30, 2024, at 1:00 p.m. from 815-580-4570
- December 30, 2024, at 5:00 p.m. from 815-580-4570
- December 30, 2024, at 7:04 p.m. from 815-580-4570
- December 31, 2024, at 8:15 a.m. from 815-580-4570
- December 31, 2024, at 10:18 a.m. from 815-580-4570
- December 31, 2024, at 12:14 p.m. from 815-580-4570
- December 31, 2024, at 2:39 p.m. from 815-580-4570
- January 3, 2025, at 10:11 a.m. from 815-580-4570
- January 3, 2025, at 11:58 p.m. from 815-580-4570
- January 6, 2025, at 1:12 p.m. from 815-580-4570
- January 14, 2025, at 1:03 p.m. from 815-580-4570
- January 14, 2025, at 4:04 p.m. from 815-580-4570
- January 15, 2025, at 10:14 a.m. from 815-580-4570
- January 15, 2025, at 2:22 p.m. from 815-580-4570
- January 15, 2025, at 5:23 p.m. from 815-580-4570
- January 27, 2025, at 5:06 p.m. from 815-580-4570
- January 27, 2025, at 6:08 p.m. from 815-580-4570
- January 28, 2025, at 2:08 p.m. from 815-580-4570
- January 28, 2025, at 5:06 p.m. from 815-580-4570
- January 29, 2025, at 6:14 p.m. from 815-580-4570
- January 30, 2025, at 11:00 a.m. from 815-580-4570
- September 9, 2024, at 1:22 p.m. from 815-315-4558
- September 10, 2024, at 3:04 p.m. from 815-315-4558
- September 11, 2024, at 5:05 p.m. from 815-315-4558
- September 12, 2024, at 10:09 a.m. from 815-315-4558
- October 1, 2024, at 3:00 p.m. from 815-315-4558
- October 2, 2024, at 1:03 p.m. from 815-315-4558
- October 3, 2024, at 10:11 a.m. from 815-315-4558
- October 3, 2024, at 11:18 a.m. from 815-315-4558
- October 4, 2024, at 10:06 p.m. from 815-315-4558

- January 21, 2025, at 10:30 a.m. from 815-315-4558
- January 22, 2025, at 1:01 p.m. from 815-315-4558
- January 23, 2025, at 10:16 a.m. from 815-315-4558
- January 24, 2025, at 10:13 a.m. from 815-315-4558
- January 14, 2025, at 10:55 a.m. from 630-799-9041
- October 24, 2024, at 2:14 p.m. from 630-645-4341
- December 28, 2024, at 9:35 a.m. from 630-645-4341
- January 8, 2025, at 1:29 p.m. from 815-580-4570
- January 8, 2025, at 1:56 p.m. from 815-580-4570
- January 8, 2025, at 2:27 p.m. from 815-580-4570
- January 8, 2025, at 2:31 p.m. from 815-580-4570
- January 8, 2025, at 2:55 p.m. from 815-580-4570
- January 8, 2025, at 2:59 p.m. from 815-580-4570
- January 8, 2025, at 3:29 p.m. from 815-580-4570

20. Those calls all came after Plaintiff expressly requested that Defendant not contact him by telephone.

21. In addition, on several occasions, Defendant has left voicemail solicitations on Plaintiff's cellular telephone.

22. For example, on December 30, 2024, Plaintiff received the following voicemail on his cellular telephone:

> Hello, this message is for Celia. My name is Patrick [xxx] calling from DeVry University responding to your request for additional information about our online degree program. Please give us a call back at 815-580-4570. Look forward to speaking with you.

23. That voicemail came from the number 815-580-4570.

24. Plaintiff received additional marketing voicemails including but not limited to the following.

- September 25, 2024, from 815-580-4570
- September 30, 2024, from 815-580-4570
- December 28, 2024, from 815-580-4570
- December 28, 2024, from 630-645-4341
- December 30, 2024, from 815-580-4570
- December 31, 2024, from 815-580-4570
- January 8, 2025, from 815-580-4570
- January 14, 2025, from 815-580-4570

5

- January 14, 2025, from 630-799-9041
- January 24, 2025, from 815-315-4558
- January 28, 2025, from 815-580-4570

25. Plaintiff has also received numerous text message solicitations from Defendant.

26. For instance, on November 21, 2024, at 5:01 p.m., Plaintiff received the following text message from Defendant:

> We appreciate your interest in Keller. We'll reach out shortly from (815) 315-4558. Reply to ask questions or the best time to reach you. – Txt STOP to cancel

27. This text message came from short code 33879.

28. The message was sent with the intent of soliciting Defendant's graduate program.

29. Shortly after receiving this message, On November 21, 2024, Plaintiff replied with the instruction to STOP as advised in Defendant's solicitation text message.

30. In response, Defendant sent a text message confirming that it had received Plaintiff's stop instruction and further stating that Plaintiff would not receive any further texts from Defendant.

31. That text message came from short code 33879.

32. That message reads as follows:
> You are unsubscribed from DeVry Alerts, no more msgs will be sent. Reply HELP for help or 888.849.6231. Msg and data rates may apply.

33. Despite confirming Plaintiff's stop request and stating that Plaintiff would not receive any further text messages, Plaintiff received the following text message solicitation on December 28, 2024, at 10:08 a.m.

> We appreciate your interest in DeVry. We'll reach out shortly from (815) 580-4570. Reply to ask questions or the best time to reach you. – Txt STOP to cancel

34. Plaintiff received additional text message solicitations from Defendant including the following:

- August 19, 2024, at 11:10 a.m.
- September 3, 2024, at 5:36 p.m.
- September 4, 2024, at 2:03 p.m.
- September 26, 2024, at 1:40 p.m.
- November 21, 2024, at 10:40 a.m.
- December 28, 2024, at 10:08 a.m.
- December 28, 2024, at 10:37 a.m.
- December 28, 2024, at 10:40 a.m.
- December 28, 2024, at 10:48 a.m.

- December 28, 2024, at 11:24 a.m.
- December 28, 2024, at 11:27 a.m.
- December 28, 2024, at 11:55 a.m.
- December 28, 2024, at 12: 52 p.m.
- December 28, 2024, at 1:06 p.m.
- December 30, 2024, at 10:39 a.m.
- December 30, 2024, at 12:39 a.m.
- December 31, 2024, at 10:40 a.m.
- December 31, 2024, at 12:48 p.m.
- January 6, 2024, at 1:13 p.m.
- January 8, 2024, at 1:59 p.m.
- January 14, 2024, at 1:02 p.m.

35. All of these messages came from short code 33879.

36. Plaintiff sent additional opt-out text message requests and received confirmations from Defendant on at least the following:
    - December 28, 2024, at 12:53 p.m.
    - December 28, 2024, at 1:06 p.m.
    - December 30, 2024, at 2:01 p.m.
    - December 31, 2024, at 10:40 a.m.
    - December 31, 2024, at 12:48 p.m.
    - January 14, 2025, at 1:02 p.m.

37. As demonstrated by the above messages, the purpose of Defendant's text messages was to advertise, promote, and/or market Defendant's property, goods, and/or services.

38. As demonstrated by the above-mentioned messages Defendant does not honor consumer requests to opt-out of text message solicitations.

39. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations by responding, but Defendant continued to text message Plaintiff.

40. This was even after Defendant had confirmed Plaintiff's opt-out request.

41. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant. The precise details regarding its lack of requisite policies and procedures are solely within Defendant's knowledge and control.

7

42. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not provide training to its personnel engaged in telemarketing. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

43. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not maintain a standalone do-not-call list. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

44. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made opt-out requests and that those requests were never processed; they were ignored by Defendant and its employees and Defendant continued to send text messages.

45. Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and Class members. Defendant also has access to text message logs showing Plaintiff's and Class members' inbound opt-out requests.

46. Plaintiff and Class Members revoked any consent they may have previously provided to Defendant by replying with a "STOP" or similar opt-out instruction in response to Defendant's text messages.

47. In addition to the do-not-call requests that Plaintiff made to Defendant's representatives and Plaintiff's text message stop instructions, Plaintiff directly called Defendant on January 8, 2025.

48. On this occasion, Plaintiff asked to speak to a supervisor.

49. Plaintiff explained to the individual who identified himself as a supervisor of the Defendant that he was not, and never has been, interested in Plaintiff's services.

50. Further, Plaintiff emphasized that he had already requested several times that Defendant cease soliciting to him and once again requested that Defendant stop telemarketing to him.

51. Defendant's representative assured Plaintiff that he would not receive additional communications.

52. Furthermore, on January 8, 2025, Plaintiff filed an incident report with the Channahon Police Department detailing Defendant's noncompliance with his do-not-call requests in another attempt to stop Plaintiff's harassing and persistent calls and texts.

53. Defendant's telemarketing caused Plaintiff and Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## CLASS ALLEGATIONS

**PROPOSED CLASSES**

54. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

55. Plaintiff brings this case on behalf of the Classes defined as follows:

> IDNC Class: All persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received two or more text messages within any 12-month period, from or on behalf of Defendant, regarding Defendant's goods or services, to said person's residential cellular telephone number, *after* communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.

> DNC CLASS: All persons in the United States who, within the four years prior to the filing of this action through the date of class certification, (1) were sent more than one text message within any 12-month period; (2) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (3) regarding Defendant's property, goods, and/or services; (4) to said person's residential cellular telephone number; (5) after making a request to Defendant to not receive further text messages by replying with a "stop" or similar opt-out instruction in response to Defendant's text message(s).

56. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

9

57. Defendant and its employees or agents are excluded from the Classes.

**NUMEROSITY**

58. Plaintiff does not know the exact number of members of the Class but is informed and believes that there are at least 50 individuals that fall within the class definitions given Defendant's use of robotexts to solicit consumers and refusal to honor stop requests. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

59. The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

60. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

    a. Whether Defendant sent text messages to Plaintiff and the Class members;

    b. Whether Defendant continued to send text message solicitations after opt-out requests;

    c. Whether Defendant failed to honor Plaintiff's and the Class members' opt-out requests;

    d. Whether Defendant implemented the requisite training of personnel under section 64.1200;

    e. Whether Defendant maintains an internal do-not-call list and instructs its employees on how to use the list;

    f. Whether Defendant text messaged individuals who had registered their telephone numbers on the National Do Not Call Registry;

    g. Whether Defendant maintains the required policies and procedures under section 64.1200; and

    h. Whether Defendant is liable for damages, and the amount of such damages.

61. The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

62. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

63. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

64. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

65. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## **VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
### (On Behalf of Plaintiff and the IDNC Class)

66. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 64 as if fully set forth herein.

67. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests*. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

68. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

69. Plaintiff and the Class Members are residential telephone subscribers who received more than one text message made for purposes of telemarketing or solicitation purposes from Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests.

70. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

71. Plaintiff and the Class Members revoked any consent they may have previously provided Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

72. Plaintiff and the Class Members terminated any business relationship they may have previously had with Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages. *See* 47 C.F.R. § 64.1200(f)(5)(i). (A consumer's "seller-specific do-not-call request * * * terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller.")

73. Plaintiff and the Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

74. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

75. Defendant failed to honor Plaintiff's and the Class members' opt-out requests.

76. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

77. Plaintiff and the Class members are informed and believe that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls or text messages.

78. Plaintiff and the Class members are informed and believe that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

79. Plaintiff and the Class members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

80. The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

81. Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

82. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

83. As a result of Defendant's knowing or willful conduct, Plaintiff and the Class members are entitled to an award of $1,500.00 in statutory damages per violation.

## COUNT II
### Violations of 47 U.S.C. § 227(c) and 64.1200(c)
**(On Behalf of Plaintiff and the DNC Class)**

84. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 64 as if fully set forth herein.

85. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

86. Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

87. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

88. Plaintiff and the Class Members revoked any consent they may have previously provided Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

89. Plaintiff and the Class Members terminated any business relationship they may have previously had with Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages. *See* 47 C.F.R. § 64.1200(f)(5)(i). (A consumer's "seller-specific do-not-call request * * * terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller.")

90. Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

91. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one text message in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

92. As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Class

15

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

a) An award of statutory damages for Plaintiff and each member of the Class as applicable under the TCPA;

b) An order declaring that Defendant's actions, as set out above, violate the TCPA;

c) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list

d) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 19th day of February, 2025.

By: */s/ Samuel J. Strauss*
Samuel J. Strauss
Alex Phillips
sam@straussborrelli.com (ARDC 6340331)
aphillips@straussborrelli.com (ARDC 6341301)
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610

Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

*Attorneys for Plaintiffs and Proposed Class*